UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALBERT T. SAVAGE,            )
                             )
    Plaintiff               )
                             )
v.                           ) Civil No. 1:09-cv-00598-JAW
                             )
SOCIAL SECURITY ADMINISTRATION )
COMMISSIONER,                )
                             )
    Defendant               )

## RECOMMENDED DECISION

The Social Security Administration found that Albert Savage, 50 years old as of the alleged onset of disability in February 2005, has severe impairments consisting of degenerative disk disease, a right knee medial meniscus tear, and right shoulder tendinitis, can no longer perform the work he once did, but retains the functional capacity to perform substantial gainful activity, including specific jobs existing in significant numbers in the national economy, resulting in a denial of Savage's application for disability benefits under Title II and Title XVI of the Social Security Act. Savage commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 2, 4, and 5 of the five-step sequential evaluation process. I recommend that the Court vacate and remand for further proceedings.

## Standard of Review

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The

ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

The Commissioner's final decision is the July 7, 2008, decision of Administrative Law Judge John L. Melanson (R. 17-27) because the Appeals Council reviewed it and determined that there was no reason to assume jurisdiction (R. 1). The following discussion tracks the five-step sequential evaluation process, as does the Administrative Law Judge's decision.

The Administrative Law Judge found that Mr. Savage has not engaged in substantial gainful activity since February 15, 2005, the date of alleged onset of disability, thereby checking off Step 1 of the sequential evaluation process. (Finding 2, R. 19.)

At Step 2, the Judge found that Savage's severe limitations are degenerative disk disease with spinal canal stenosis at L3-4, L4-5, and L5-S1, a right knee medial meniscus tear, and right shoulder tendinitis. The Judge rejected Savage's contention that he also suffers from severe depression or anxiety. (Finding 3, R. 19-20.) Savage alleges error at Step 2 in relation to the existence of a severe mental disorder. (Statement of Errors at 1-7, Doc. No. 11.)

At Step 3, the Judge found that Savage's combination of impairments did not meet or equal any of the impairments identified in the Commissioner's Listing of Impairments. (Finding 4, R. 21.) Savage does not assert error in regard to this finding.

At Step 4, the Judge found that Savage has the residual functional capacity to engage in light exertion, unskilled work, subject to certain additional postural, manipulative, and environmental restrictions. (Finding 5, R. 21.) Because of these restrictions, the Judge found that Savage can no longer engage in past relevant work as a caretaker, fish deboner, and pipe

fitter because those occupations require medium or heavy exertion. (Finding 6, R. 25.) Savage alleges errors in the physical residual functional capacity finding in regard to the degree of limitation assigned to his knee impairment. (Statement of Errors at 7-13.)

At Step 5, the Judge found that Savage could successfully engage in other work existing in significant numbers in the national economy based on vocational expert testimony related to the occupation of "checker I" and testimony to the effect that someone with Savage's residual functional capacity and vocational profile would still be able to perform about 65% of the unskilled, light exertion work base, resulting in a finding of "not disabled." (Finding 10, R. 25-26.) Savage alleges error at Step 5 because the Judge's questions for the vocational expert failed to reflect a more severe knee impairment or any mental impairment. (Statement of Errors at 13-14.)

The following discussion addresses the allegations of error at Steps 2, 4, and 5. The Commissioner's step 2 finding passes muster. His step 4 and 5 findings do not.

**A.    Step 2**

At Step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe medically determinable physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. §§ 404.1509, 416.909. To meet the severity requirement, the claimant must show that an impairment or combination of impairments amounts to more than a "slight abnormality" and has more than "a minimal effect on an individual's ability to work." McDonald v. Sec'y of Health &

Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986); Social Security Ruling 85-28. This burden is a *de minimis* burden, designed to do no more than screen out groundless claims. Id. at 1123. Only medical evidence may be used to support a finding that an impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1528(a), 416.928; Social Security Ruling 85-28.

Savage's alleged onset of disability coincides with an alleged onset of stress arising from the February 2005 death of his mother, his last living parent. (R. 20.) However, a July 2006 psychological review (R. 240-44), a medical expert's application of the Commissioner's psychiatric review technique in August 2006 (R. 246, 249, 256), and another expert's application of the psychiatric review technique in January 2007 (R. 286, 289, 296), all point to only mild impairment. Savage does not point to any underlying medical evidence that persuasively demonstrates otherwise. There is evidence of an anti-depressant prescription as of September 2006 (R. 275-77), evidence that was considered in conjunction with the second review technique (R. 298). Subsequent to these psychiatric evaluations, in January 2008 Savage's wife passed away, causing him acute distress. In connection with that development, Savage's medical records from his primary care physician indicate "grief reaction" on February 15, 2008. (R. 427.) The record reflects that Savage treated with James R. Werrbach, Ph.D., in 45-minute counseling sessions on February 19, 2008, and on March 25, 2008. Dr. Werrbach indicated that Savage suffered from "major depressive episode, recurrent, severe symptoms." (R. 428, 429.) The record compiles medical records through July 2008, but the records of depression dated after March 2008 are limited to an April 2, 2008, visit for back, shoulder, and hamstring pain in which Savage is noted as appearing "appropriately sad" with "depressed mood" associated with his wife's death. (R. 418-19.) "Grief reaction, Assessment: Improved" was noted. (R. 419.)

At the hearing, Savage's hearing representative asked the medical expert witness whether

he had any thoughts concerning the evidence of depression. The medical expert responded that there was "evidence throughout the record of a degree of depression" and that "with the loss of his wife, there would be grief reaction which would exacerbate . . . any prior existing depression," but that ordinarily such a reaction can be expected to subside within "six plus or minus months." (R. 71.)

The Judge found that the degree of depression demonstrated by the longitudinal medical records was non-severe. Two psychiatric review technique opinions in the record support this conclusion. The Judge permissibly concluded that these expert assessments were consistent with the medical evidence based on the failure of treating sources to diagnose an affective disorder or to refer Savage for mental health treatment or prescribe antidepressants in the timeframe between the alleged onset date in February 2005 (coinciding with his mother's death) through the July 2006 psychological review. As for the introduction of antidepressants in September 2006, the Judge found that the medications resulted in improvement in Savage's symptoms based on his appropriate mood and affect at various subsequent visits with care providers, until the death of his wife in 2008. This assessment is supported by the second psychiatric review technique performed within this window of time, on January 24, 2007, where depression was found to be a non-severe impairment. (R. 286.) This is substantial evidence in support of the Judge's finding that Savage's baseline depression, as of the death of his wife, was not a severe impairment for vocational purposes.

As for the acute distress arising from the death of Savage's wife, the Judge relied on the opinion of the testifying medical expert that such grief, though great, would not likely result in severe impairment for the requisite 12-month period. (R. 20-21.) In opposition to this finding, Savage relies on the treatment notes of Dr. Werrbach, who diagnosed severe symptoms in

5

February and March of 2008. (Statement of Errors at 5-6.) He also points to the fact that depression has been present in his records for more than 12 months. (Id. at 7.) Dr. Werrbach's treatment notes and diagnosis is not inconsistent with the Judge's finding or with the testifying expert's opinion. It is Savage's burden at Step 2 to prove the existence of a severe mental impairment with medical evidence. Arguably, the Judge was not compelled on this record to find as he did, but there is substantial evidence in the record to support the finding that Savage's baseline depression was not severe and an absence of medical evidence demonstrating that his grief reaction to his wife's death resulted in a severe mental impairment of sufficient duration. In this context, it was not impermissible for the Judge to give weight to the testifying expert's opinion that a typical grief cycle would subside within roughly six months.[1]

**B.    Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. §§ 404.1520(f), 416.920(f). As a component of proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); "Clarification of Rules Involving Residual Functional Capacity Assessments," 68

---

[1]    Savage complains that the Judge characterized his allegations unfavorably and that this amounts to reversible error. (Statement of Errors at 2.) Contrary to Savage's contention, the Judge did not use either his allegations or his activities of daily living "as the foundation for determining that the Plaintiff's mental impairment is not severe." (Id.)

6

Fed. Reg. 51,153, 51,157 (Aug. 26, 2003).

Savage contends that the Judge erred in regard to the degree of limitation assigned to his right knee impairment and impermissibly "discounted" both his subjective complaints and the limitations assessed by his treating physician, Dr. Chris Sornberger, D.O. (Statement of Errors at 7-8.) According to Savage, he cannot remain standing for more than five minutes or walk more than 200 feet at a time. (Id. at 8.) He argues that his subjective allegations are borne out by new objective evidence, as confirmed by the hearing testimony of Dr. Webber, a medical expert called by the Administrative Law Judge. (Id. at 10-11.)

As a preliminary matter, the Judge's residual functional capacity finding is consistent with, and is supported by, physical RFC assessments performed by consulting experts in August 2006 (R. 260-67) and January 2007 (R. 278-285). However, the Judge's finding is inconsistent with opinions expressed by both a treating physician and a consulting, examining expert, as described below. Moreover, the physical RFC assessments are based in large measure on the absence of clinical evidence of impairment and there is now new radiological evidence supportive of the right knee impairment.

Savage's knee impairment (medial meniscus tear) is a longstanding condition arising from a workplace accident in 1997 for which arthroscopy was performed. (R. 233.) There is evidence in the file that Savage considered his knee impairment to be of tertiary concern when compared to his back and shoulder symptoms. As of July 2006, Savage described chronic pain upon prolonged weight-bearing or excessive bending or lifting effort, but denied use of any assistive devices such as a brace for support in daily activities. (Id.) Nevertheless, in July 2006, in a physical examination report prepared for Disability Determination Services, Dr. Robert Keenan, M.D., assessed a restriction in walking, with a maximum duration of 15 to 20 minutes,

7

and an ability to stand for only 10 to 15 minutes.  (Ex. 3F, R. 236.)

A subsequent RFC assessment by Dr. Iver C. Nielson, dated August 15, 2006, relates an opinion that Dr. Keenan's evaluation relied excessively on Savage's subjective report rather than clinical or objective findings.  (Ex. 6F, R. 266.)  Dr. Nielson assessed an ability to stand or walk for six hours in an eight-hour work day (R. 261), seemingly based on degenerative disk disease in the lumbar spine and arthritis, and an absence of objective evidence of a greater limitation (R. 265, 266).  A second physical RFC assessment by Dr. Richard Chamberlin, M.D., dated January 19, 2007, also indicated an ability to walk or stand for six hours.  (Ex. 8F, R. 279.)  Dr. Chamberlin did not question Dr. Keenan's assessment as Dr. Nielson had, but he did not incorporate it, either.  (R. 285.)  Dr. Chamberlin described his assessment as a review of new radiological evidence for purposes of reconsidering findings related to Savage's degenerative disk disease.  (R. 283.)  The restrictions imposed by Dr. Chamberlin similarly emphasize limitations arising from degenerative disk disease.  (R. 278, 280.)

Savage relies in part on Dr. Keenan's opinion and in part on treatment records from the EMMC Center for Family Medicine dated between February and March of 2008 (Ex. 23F, R. 418-427). A February 15, 2008, record reports long-term right knee pain, "worse with exertion-walking, cannot walk more than 200 feet per pt report, pt states he cannot stand/bear weight for more than 5 minutes due to severity of pain into knee, deni[e]s any new or recent trauma."  (R. 425.)  On the clinical side, the note relates:  "Extremities: full joint motion, no deformities, normal gait."  (Id.)  Based on this February 2008 visit, Dr. Kris Sornberger, D.O., prescribed a knee brace and treatment with heat, ice, rest, and stretching.  (R. 426.)  Dr. Sornberger also applied certain osteopathic techniques "with improvement in clinical findings."  (R. 427.)  Based on this February 2008 visit, Dr. Sornberger wrote a letter dated February 14 indicating:

> Mr. Savage['s] ability to work is limited due to the fact that he has a medical meniscus tear of his right knee, as evidenced by MRI of knee of 1/19/08.
>
> Mr. Savage due to this injury has trouble standing or bearing weight on the right knee for more than five minutes.
>
> Mr. Savage cannot walk more than 200 feet without significant discomfort into the knee.

(R. 397.) The MRI of the right knee provides an objective diagnosis of "irregular cartilaginous thinning at the medial femoral condyle" and a "subtle probable tear involving the posterior horn of the medial meniscus." (Ex. 18F, R. 396.) The MRI came up as a topic of discussion at the administrative hearing. Savage testified that his knee "hadn't been too bad until this last several months, as my wife was getting worse." (R. 41.) According to Savage, he reinjured his knee because he was going up and down two flights of stairs from the basement computer to assist his sick wife who periodically required his assistance. (R. 43.) The only physicians of record who factored the MRI into their opinions were Dr. Sornberger and the testifying medical expert, Dr. Webber. Both physicians agree that the MRI provides objective evidence of a physical condition that could reasonably cause enough pain to substantially restrict Savage's ability to stand or walk. (R. 55, 397.) When asked at the hearing whether he considered it reasonable that Savage might not be able to stand or bear weight for more than five minutes, or walk more than 200 feet, based on what he had seen in the MRI, Dr. Webber responded "yes." (R. 55.) Dr. Webber later testified: "I don't think you can . . . make a decision about his ability to go back to work until it is seen what is going on inside that knee and the success or lack of success of a surgical therapy." (R. 69.)

An administrative law judge is permitted to rely on the RFC assessment of a consulting physician over the competing assessment of a treating or examining physician, provided the

9

consulting physician's assessment is consistent with the objective medical evidence and the administrative law judge provides reasons for rejecting the treating source's assessment. Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts."); 20 C.F.R. § 404.1527(d)(2) (reserving "controlling weight" for those treating source opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record" and articulating factors that govern the amount of weight assigned to treating source opinions); SSR 96-8p, 1996 SSR Lexis 5, 1996 WL 374184 (July 2, 1996) (describing evidence considered for purposes of RFC determination).

In this case, the Administrative Law Judge discounted Dr. Keenan's evaluation and Dr. Sornberger's opinion, and recharacterized the testimony given by the testifying expert,[2] but he never explained (with respect to the knee impairment) how the opinions of these three doctors were inconsistent with the MRI and he has no consulting expert opinion to fall back on because the physical RFC assessments in the file predate the MRI of the right knee. I recognize that the MRI may not objectively establish the degree of impairment and pain Savage experiences in connection with standing, walking, or walking while bearing weight, and that there is some record evidence that Savage did not consider his knee impairment to be his most severe condition (at least not in the context of daily living, as opposed to substantial gainful activity), but both of the physicians who have considered the MRI found it not only significant, but significant enough to prevent a casual finding that Savage can stand and/or walk for six hours daily. That he can do so while also bearing weight is something that is not supported by

---

[2] According to the Judge, the independent testifying medical expert "testified reliably that the claimant suffered a significant impairment that could cause varying degrees of episodic pain." (R. 25.)

10

substantial evidence as the record now stands.

      The Judge did not dispute that an underlying condition could reasonably be expected to produce pain, but chose to reject Savage's allegations concerning the intensity, persistence and limiting effects of pain based on a negative credibility finding. In support of this finding, the Judge emphasized the fact that Savage ranked his knee troubles third behind both his back and his neck pain (R. 22), unremarkable medical findings or treatment records for roughly a two-year period subsequent to the date of alleged disability onset, reaching into 2007 (R. 22-23), only moderate subjective pain ratings (3 or 4 out of 10) by Savage throughout 2007 (R. 23, citing Ex. 15F), rejection of physical therapy (R. 23), normal strength, gait, and joint motion upon examination in January 2008 (R. 23), a willingness to engage in heavy exertion snow shoveling in March 2008 despite allegations of disabling pain (R. 24), and activities of daily living beyond the alleged degree of function (R. 24).

      This case presents a very close question. Savage contends that this case is different from the ordinary case involving a claimant's credibility because he obtained a positive MRI demonstrating a "new" development. The record does not exactly reveal a new condition. The January 19, 2008, radiology report states that the MRI was meant to image Savage's right knee based on a history of chronic knee pain from an "old meniscal tear." (R. 415.) There is also some grist in this record for the credibility mill. Nevertheless, the recent MRI of the right knee provides objective evidence of a presently existing, severe clinical condition, so it does represent new objective evidence. Based on this new evidence, I consider the physical RFC assessments performed by Drs. Nielson and Chamberlin, which were based exclusively on file review, to be relatively unreliable as compared to the opinions of Drs. Keenan and Sornberger, who actually examined Savage. The RFC assessments are also unreliable given their lack of attention to the

11

knee impairment and do not afford substantial evidentiary support for the Judge's finding when weighed against the views expressed by the two physicians who reviewed the MRI, Drs. Sornberger and Webber. Savage is entitled to a finding related to the combined effects of his various impairments and the two RFC assessments simply do not demonstrate sufficient consideration of the long-standing right knee impairment, particularly in light of new objective evidence of a tear in the meniscus.

Given this particular mix of evidence, I conclude that the Nielson and Chamberlin assessments are not substantial evidence in support of the Judge's finding that Savage can engage in competitive employment on his feet for six hours in an eight-hour work day, five days per week. For example, Dr. Nielson faulted Dr. Keenan's examination-based opinion on the ground that Keenan did not rely on any objective evidence. The file now contains additional objective evidence that appears to be more consistent with Dr. Keenan's opinion than Dr. Nielson's, at least according to Dr. Sornberger, and seemingly Dr. Webber as well. Additionally, Dr. Chamberlin's assessment was focused on reconsidering Savage's degenerative disk disease. As of the date of hearing, the appropriate focus should have been the combined impact of all impairments. Why a consulting expert should be consulted to reconsider new radiological evidence associated with the spine, but not new radiological evidence concerning the right knee, is not plain, except to the extent that timing is concerned. Given the non-adversarial nature of the proceedings, further expert consideration is warranted.

## C.     Step 5

At Step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); <u>Bowen v. Yuckert</u>, 482 U.S. 137,

146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden shift is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of other work the claimant can do. The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work. Ordinarily, the Commissioner will meet the Step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC. Id.

To satisfy the Commissioner's burden at Step 5, the Judge relied on vocational expert testimony that someone with the residual functional capacity described in the Judge's findings and Savage's particular vocational profile could perform roughly 65% of the unskilled, light occupational work base, including a representative job called "checker I." (R. 26, 62-63.) The error at Step 4 undermines both of these findings.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court VACATE the Commissioner's decision and REMAND for further proceedings.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 29, 2010